Juan Avalos **GUEVARA, Jr.,** Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 16364.

United States Court of Appeals
Fifth Circuit.

March 28, 1957.

Joseph A. Calamia, El Paso, Tex., for appellant.

Wm. Monroe Kerr, Asst. U. S. Atty., El Paso, Tex., Russell B. Wine, U. S. Atty., San Antonio, Tex., Holvey Williams, Asst. U. S. Atty., El Paso, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

Appellant was convicted under two counts [1] for violating the provisions of the Internal Revenue Code relating to marihuana. The primary question is whether the district court erred in deny-

---

1. First Count: "* * * Juan Avalos Guevara, Jr., being then and there a transferee required to pay the transfer tax imposed by law, acquired and obtained, by transfer, from some person to your Grand Jurors unknown, 50 Marihuana Cigarettes, without having paid such tax." Second Count: "* * * transported and concealed, and facilitated the transportation and concealment of 50 Marihuana Cigarettes, knowing that said Marihuana had been acquired and obtained without the transfer tax provided for in Section 4741(a) of Title 26, United States Code, having been paid."

ing the defendant's motion for judgment of acquittal.

The evidence is simple and was given by only two witnesses. George D. Scales, a Treasury Department Customs Agent, testified that, according to a chemical analysis which he had secured, the cigarettes found in defendant's car were marihuana cigarettes, and that, upon his demand upon the defendant for the required order form, the defendant failed to produce it and said that he had no such form. Mr. Scales apparently had no other connection with the case. The principal witness for the Government was George D. Hernandez, a detective in the Police Department of the City of El Paso. He testified that at about 9 o'clock on the evening of August 23, 1956, he was in the Arlington Bar at the intersection of El Paso and Paisano Streets in El Paso and saw Guevara walking along the street acting as though he was looking for some other person; that Guevara entered the Central Hotel which was across the street from the saloon and remained there for some ten minutes; that shortly after coming back on El Paso Street, Guevara met another man who in this case remains nameless. Hernandez shadowed Guevara and his companion as they walked around the block and got into a parked car which was not locked. Both men got into the front seat, Guevara getting in on the driver's side and driving the car away. At this point, Officer Hernandez got into a parked police car with two other officers who had been helping him, and they followed the car Guevara was driving for some three and one-half blocks, until it was stopped at an intersection by a red light. At this point Hernandez and one of the other officers, named Gonzales, rushed out and without more ado placed Guevara and his companion under arrest. The two prisoners were taken to the police station in the police car and Hernandez alone drove Guevara's car to the police station. There it was searched and a stick of wood wrapped with tape and prepared as a club was found on the floor directly under Guevara's seat, and a package containing 50 marihuana cigarettes was also found on the floor under the seat but in the middle of the car about halfway between the driver's seat and the passenger's seat. Guevara admitted owning the club, explaining that he carried it for protection since recently he had been attacked and knifed by an assailant, but both he and his companion denied any knowledge of the marihuana cigarettes which lay on the floor under the seat between them. The police officers believed the statement made by both men that Guevara was only carrying his passenger home and, therefore, released this unnamed companion and he went on his way. Officer Hernandez stated on cross-examination that, during the time in which he had Guevara under observation, Guevara committed no unlawful act. He also testified that the seat of the car was so constructed that either Guevara or his companion could have placed the cigarettes in the position where they were found merely by lowering a hand.

The Government relies on the presumption permitted by the statute.[2] This evidentiary device adopted by the Congress has its roots in our early common law.[3] Its reasonableness in marihuana cases is probably supported by similar grounds to those stated by the Supreme Court in connection with legislation on the opium trade.[4] There is no question as to its constitutionality here.

"Possession" is not defined by statute. It must, of course, be a know-

---

2. 26 U.S.C.A., § 4744(a) (2):
   " * * * Proof that any person shall have had in his possession any marihuana and shall have failed, after reasonable notice and demand by the Secretary or his delegate, to produce the order form required by 4742 to be retained by him shall be presumptive evidence of guilt under this subsection and of liability for the tax imposed by section 4741(a)."

3. 1 Wigmore on Evidence, § 152.

4. Yee Hem v. United States, 268 U.S. 178, 183, et seq., 45 S.Ct. 470, 69 L.Ed. 904.

ing possession.[5] It has been said that in common speech and in legal terminology no term is more ambiguous than the word "possession," and this is especially true when it occurs in criminal statutory provisions.[6] It is so fraught with danger that the courts must scrutinize its use with all diligence, and the jury must be carefully instructed in order to prevent injustice. In Barfield v. United States, 5 Cir., 229 F.2d 936, 940, we called attention to the necessity for a clear and understandable instruction on the concept of possession. Here, as there, possession is crucial to the whole case.[7]

" 'The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.' Glasser v. United States, supra, [315 U.S. 60, 62 S.Ct. 469]. In circumstantial evidence cases, this Court has said that the test to be applied is whether the jury might reasonably find that the evidence excludes every reasonable hypothesis except that of guilt. Vick v. United States, 5 Cir., 216 F.2d 228, 232, and cases there cited; see also United States v. Levy, 7 Cir., 138 F.2d 429, 430, 431." Lloyd v. United States, 5 Cir., 226 F.2d 9, 13–14.

■■ Was then the jury warranted in deducing from the evidence inferences which excluded every reasonable hypothesis but that of guilt? We think not. The cigarettes were in such position in the car that they could easily have been placed in the unlocked vehicle by any person. Under the circumstances here proved, there is no rational connection between ownership and possession of the automobile and possession of the cigarettes. For all that the present evidence shows, it is just as reasonable to believe that the cigarettes belonged to the passenger as to the appellant. A jury must not be left to speculate and surmise in a criminal case, merely hoping that they are drawing the proper inference.

"The authorities are clear that circumstantial evidence may, of course, be sufficient to convict. Nevertheless, because of the fact that it is circumstantial and that a grave wrong may be done to an innocent man by reasoning from circumstances not sufficiently cogent in themselves or as connected, and particularly not sufficiently exclusive of every innocent hypothesis, the courts have been very sedulous to prevent an innocent man being found guilty where the evidence does not conform to the acceptable standards." Rodriguez v. United States, 5 Cir., 232 F.2d 819, 821.

■ The judgment of conviction is reversed, but, since the Government may possibly have further evidence, the cause is remanded for further proceedings not inconsistent with this opinion. See Bryan v. United States, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335; cf. Sapir v. United States, 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426.

Reversed and remanded.

5. United States v. Maghinang, D.C.Del., 111 F.Supp. 760, 761; 9 Wigmore on Evidence § 2513, n. 3, 4, 5, and 6.

6. 72 C.J.S., p. 233, and cases collected under notes 87 & 88.

7. See also United States v. Tijerina, D.C., 138 F.Supp. 759, in which Judge Allred held that the finding of a package of marihuana in the curve of the bumper of the automobile was not sufficient to show possession in either the owner or the passengers of the car.